## IN THE COURT OF APPEALS OF IOWA

No. 15-0679
Filed November 9, 2016

**MICHAEL E. HILSON,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

Michael Hilson appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

Joel E. Fenton of Law Offices of Joel E. Fenton, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Michael Hilson appeals the district court's denial of his postconviction-relief (PCR) application, alleging ineffective assistance of counsel based on his counsel's purported failure to adequately investigate his case and failure to utilize an expert witness. We affirm.

## I. Background Facts and Proceedings

The facts underlying Hilson's charge and conviction were previously summarized by this court:

> In September 2006 T.B. called 911 to report she had been raped. Officer Bernlohr, who was nearby, responded within a few minutes. She encountered a crying, distraught, and injured T.B. who described the events of the preceding four hours. The officer took T.B. to the hospital, where she was examined by Nurse Williamson, a sexual assault nurse examiner. Williamson spoke with and examined T.B., including preparing a rape kit. The sealed rape kit was taken to the police department, where it remained for about two years. T.B. died in a motor vehicle accident in late 2006.
>
> In May 2008 a detective had the rape kit sent to the Iowa Division of Criminal Investigation [(DCI)] for analysis. The DNA analysis led the detective to Hilson, who was charged in December with burglary in the first degree and sexual abuse in the second degree. . . .
>
> . . . .
>
> . . . The jury found Hilson guilty of burglary in the first degree and sexual abuse in the third degree.

*State v. Hilson*, No. 10-0665, 2013 WL 541621, at *1 (Iowa Ct. App. Feb. 13, 2013). Hilson appealed his conviction, contending the trial court erred in admitting statements T.B. made to Officer Bernlohr and Nurse Williamson. *Id.* His conviction was affirmed on appeal. *Id.* at *3. In July 2013, Hilson filed a pro se PCR application, raising numerous challenges to his conviction and sentence. A hearing was held on Hilson's claims in December 2014. The PCR court denied Hilson's application in April 2015. Hilson appeals.

## II. Standard and Scope of Review

PCR proceedings, including summary dismissal of PCR applications, are generally reviewed for errors at law. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). We review ineffective-assistance-of-counsel claims de novo. *See State v. Tompkins*, 859 N.W.2d 631, 636 (Iowa 2015). In order to prove an ineffective-assistance-of-counsel claim, an appellant must show by a preponderance of the evidence that counsel (1) failed to perform an essential duty and (2) prejudice resulted. *Id.* at 637. We can resolve ineffective-assistance-of-counsel claims under either prong. *State v. Ambrose*, 861 N.W.2d 550, 556 (Iowa 2015); *see also Dockery v. State*, No. 13-2067, 2016 WL 351251, at *3 (Iowa Ct. App. Jan. 27, 2016).

## III. Analysis

On appeal, Hilson claims his counsel was ineffective in failing to adequately investigate his case and failing to retain or consult an expert witness.

First, Hilson claims his counsel inadequately investigated alibi or exculpatory witnesses.[1] The PCR court disagreed, concluding Hilson's counsel had "exceeded the standard of reasonably competent representation as he examined witnesses by taking at least ten depositions and he investigated potentially exculpatory evidence." The PCR court noted Hilson's counsel

> investigated, identified, and deposed potential witnesses, but he concluded, for one reason or another, their testimony would not aid Hilson's case. Relying on a private investigator employed by one of Hilson's previous attorneys, [Hilson's counsel] tracked down numerous witnesses who could only testify whether or not they thought Hilson could

---

[1] The trial counsel at issue on appeal was Hilson's third counsel. The record indicates he received information from Hilson's previous two attorneys.

commit the crime. [Hilson's counsel] did find one potential witness who claimed to have an alibi for Hilson, but [he] discounted that testimony as unreliable considering the time passage between the crime and the fact that Hilson could only vaguely remember what he had been doing at that time, but the witness distinctly remembered Hilson being with him all night. Those credibility issues, coupled with the DNA evidence implicating Hilson, severely reduces the likelihood that the witness would change the outcome, and [Hilson's counsel] was reasonable to discount the statement and not put the witness on the stand.

"Counsel is required to conduct a reasonable investigation or make reasonable decisions that make a particular investigation unnecessary." *Ledezma v.* State, 626 N.W.2d 134, 146 (Iowa 2001). "Thus, the duty to investigate is not unlimited, and trial counsel is not required to interview every potential witness." *Id.* "In each instance, the decision to investigate a particular matter must be judged in relationship to the particular underlying circumstances." *Id.*

On appeal, Hilson does not dispute that his counsel conducted these depositions and utilized a private investigator. Hilson simply disagrees with his counsel's decision not to use the potential alibi witness at trial and generically alleges more investigation should have been done, particularly into the victim's initial report that a second man was present during the sexual assault. On our de novo review, we agree with the PCR court that no duty was breached by Hilson's counsel in investigating this matter.

Further, Hilson has failed to meet his burden of demonstrating prejudice. *See id.* at 143 (noting, in the event an applicant shows his counsel was ineffective, he "must also [show] that the error caused prejudice"). Hilson does not identify specific alibi witnesses he believes his counsel should have

contacted or any helpful information any unidentified individuals would have provided. Hilson's contention rests on little more than speculation. This does not meet his burden to show a reasonable probability that a different outcome would have resulted. *See id.* at 145 (requiring a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Hilson also alleges his counsel was ineffective for failing to retain or consult an expert witness. Specifically, Hilson wanted an expert to examine certain items recovered from the victim's apartment—including bedding, towels, and clothing—that were stained with substances, some of which were believed to be Kool-Aid. At his PCR hearing, Hilson indicated he "wanted everything tested." On appeal, he specifies he "was concerned that this material was either not blood or was blood from a potential other perpetrator." In addressing this contention, the district court found:

> With regards to the testing of the evidence, the court notes that Hilson's trial was continued several times to allow for additional testing on the DNA evidence, and three testing facilities reached the same conclusions, i.e. that Hilson's DNA matched the DNA found in or on the victim. While the first independent lab merely analyzed the DCI's results and conclusions, [Hilson's counsel] accommodated Hilson's insistence that a third lab analyze the actual evidence. The independent lab reached the same conclusions. From this, [Hilson's counsel] concluded that the DNA results limited the need for further testing on the victim's clothes or apartment. As [Hilson's counsel] noted in his deposition, the jury almost always accepts that evidence in his experience, and so any other DNA found in the apartment or on the victim's furniture or clothing would not negate the fact that Hilson's DNA was in the victim's body. Additional testing would have exhausted resources and further delayed proceedings while offering little benefit towards Hilson's defense.

Even assuming Hilson's counsel should have had the articles evaluated, in light of the victim's assertion there were two perpetrators, Hilson has failed to show prejudice. As noted by the PCR court, the possible identification of a third person as having at some point been present in the apartment—assuming the tests would have even found DNA belonging to a third party—does not rise to the level of a reasonable probability of a different result for Hilson, whose DNA was found in the victim.[2] On our de novo review, we agree with the thorough and well-reasoned decision of the district court and affirm.

**AFFIRMED.**

---

[2] When interviewed by police, Hilson denied knowing T.B. or having ever been to T.B.'s apartment, which Hilson's counsel testified essentially precluded arguing that T.B. consented to involvement with Hilson.